No. 7636

COURT OF APPEAL

PARISH OF ORLEANS.

JOSEPH ASHER
VS.
ANTHONY J. ROSSI et al.

CAGE, J.    On May 16th 1887, the plaintiff purchased a lot of ground fronting on Burgundy Street, in this city, in the Square bounded by that Street, Flood, Dauphine and Amory Streets.

Under the paving laws in force in 1915 the City ordered Burgundy Street paved. The paving was done by Thomas Egan, contractor. The forced contribution due by the plaintiff amounted to $70.23 and the certificate therefor was issued to "Thomas Egan, Whitney=Central Trust and Savings Bank, Assignee". The bank caused the certificate to be recorded in the Mortgage office, and under the paving laws, the plaintiff owed the amount, and the payment was secured by first lien and privilege on his property. By partial payments to the Bank, he reduced the claim to $51.33. Failing to make further payments the Bank brought suit in the First City Court of New Orleans, under the No. 75183 of its docket, and obtained judgment, for the amount due, by default.

It issued a writ of _fieri facias_ under which the constable seized the lot of ground, advertised it for sale, and adjudicated it to the defendant, Rossi, for the sum and price of $50.00.

No notice was given Asher to appoint an appraiser. No appraiser was appointed by the Bank or the Constable, and the sale was made without any appraisement whatsoever,

The property is assessed for $700.00, Rossi's witness,

Donaldson, swears the property is worth $450.00. Asher swears
that he refused an offer of $1000.00 and that the value is $1100.00.
We believe Asher's estimate is nearer the value than that of Don-
aldson, and that $900.00 is probably about what the property is
worth. Under a proper appraisement thereofre, the Constable could
not have adjudicated it for less than $600.00. Without any ap-
praisement he adjudicated it to Rossi for $50.00.

This result loudly proclaims the wisdom of our law,
which strikes with nullity such sales as this, and which directs
the Courts to declare the nullity at the demand of any party in
interest.

Asher brought this suit to have the nullity of the sale
pornounced. The defense is:

"That the plaintiff is estopped from bringing said suit
or from questioning in any way defendants title to said property
for the reason, subsequent to the acqusition by the defendant of
said property, the relation of landlord and tenant existed between
defendant and plaintiff; that plaintiff acquesced in the adjudica-
tion to defendant and recognized defendant as the owner of the
rests,
property, upon which the title now questioned, and entered into a
lease and rental of said property from defendant .

The judgment in the Instant court, was in favor of
plaintiff, Asher, and from it this appeal is prosecuted.

The evidence fails to convimce us that Asher ever leased
the property from Rossi. He is an uttely illiterate and simple
minded old negro, a pensioner of the Civil War, over Seventy-five
years of age. Some one told him that Rossi had purchased his home.
He understood that it had something to do with the paving claim,
on which he had been making, partial payments, and we are sat-
isfied that all he was attempting to do was to arrange with Rossi
for a continuanse of the indulgence the Bank had extended to him.
The Veidence, to our minds, wholly negatives an acquiescence, on

112

his part, in the loss of his property, or any understanding of the defect in the sale, and an intention, notwithstanding, to condone the defect, and ratify the relative nullity.

The facts do not bear out the defense,

But even if we had found that, in ignorance of his legal rights, the old negro had leased the property from Rossi, our conclusion would have been the same, as we totally disagree with Rossi on the law.

The textual provision of the law bearing on this case is found in Art. 3441 of the Civil Code, reading:-

"Those who possess, not for themselves, but in the name of another, as farmers, depositories and others who acknowledge an owner, cannot acquire the legal possession, because, at the commence - ment of their possession they had not the intention of possession for themselves, but for another."

The reason, the justice and the equity of the provision of the law is so clear and obvious, that it requires no explanation The same rule runs thorugh all systems of law, and obtains in all the nations of which we have knowledge.

But it is not founded upon the doctrine of estoppel, nor is it founded upon a recognition of, and an acquiescence in, the title of the landlord, depositor etc, etc, beyond the time that the relation of landlord and tenant, depositor and depository, etc., exists.

To extend it further, would be to outrage our sense of justice and of right and wrong.

To illustrate our meaning let us take two suppositions, cases. A. finds in the secret drawer of an old desk which he bought from a second-hand dealer a Swiss Watch woth $3000.00, which was the property of the father of B. The father dies and B. as his sole heirs becomes the owner of the watch. A deposits tha watch with B. for safe keeping. After the watch is returned to A. B. discovers that the watch belongs to him as heir of his father, and demands

118

vs return.

To hold that he could not recover the watch, because he had once been the depository thereof, would be to distort the plain text of Art. 3441 C. C. and would do violence to all our instinctive sense of morality and justice.

But had he made the discovery while holding the watch as depository, and had he refused to return it to A. a case would have been presented for the application of Art. 3441, and the reason and philosophy underlying this Article.

Another supposititious case.

B. Looking for a location for his grocery store, finds a suitable property in the possession of A. He leases it for one year and moves in with his stock. While arranging his shelves, he finds behind a shelf the will of A's father, in which the property was bequeathed to him (B).

If he should seek to recover the property by petitory action, during the existence of his years lease, he would be properly met by pleading the provisions of Art. 3441.

But if he should wait until the expiration of his lease, should move out and surrender the keys to A. and then bring his petitory action, there is nothing in good morals, equity, justice ot the provisions of Art. 3441 which would bar his recovery.

Rossi relies on the case of Jouet vs Mortimer, 29 Ann. 213, to support his defense.
A. reading of that authority shows that the actions of Jouet in resisting the foreclosure of his creditor, Mrs. Mortimer, were so baseless, groundless, and immoral, as to excite the indignation of the Court, and it held that his offer to lease the premises, after the foreclosure sale, constituted a ratification of the sale.

Perhaps the disgust that Jouet's conduct excited in the breasts of the Court carried them rather far, Be this as it may, we find that in subsequent cases the Court stated the law of ratification, in consonance with our views, and in language decisive:

114

of this case.

In Breaux vs Sarvie 39 An. 246, the Supreme Court said:-

> "As to the character of the fact or act invoked as a confirmation or ratification, the jurisprudence of this State, gathered from the following authorities, is to the same effect, namely: that the acts from which the ratification is sought to be deduced, must evince such intention clearly and unequivocally, none will be inferred where the acts can be otherwise explained. ( long list of authorities)"

We have seen that the mere fact of accepting a lease does not estop the lessee from asserting title after his possession as lessee has terminated. We have also seen that it can operate as a bar, only when the circumstances under which the lease was made makes the act of leasing amount to a ratification and confirmation of the lessor's title.

It is axiomatic that in order to ratify an invalid contract or title , the person against whom ratification is pleaded must have had knowledge of the defect, and must have had the intention to ratify; and it is plain from the evidence that at the time Rossi claims that Asher leased, he (Asher) had no knowledge of the fatal flaw in Rossi's title, and could, therefore have had no intention to ratify it.

Without intent, there can be no crime committed and without intent there can be no contract confected.

Other decisions of the Supreme Court fortify us in the conclusions we have reached.

In Succession of Troxler 46 Ann. 748, the Court said:

> "As between the parties to transactions whose legality is fairly debatable, the doctrine of ratification should not be too rigidly applied."

And in Succession of Eastum, 49 Ann. 1345.

> "An act from which ratification is sought to be deduced must evince

115

such intention clearly and unequiv-
ocally. Braeux vs Servie 39 Ann. 246, 1
South 514. Nor will ratification be
inferred where the act can be otherwise
explained, and in case of doubt the party
against whom the act is opposed must have
the benefit of the doubt. See also Suc. of
Troxler 46 Ann 738, 15 South South.
153 xxx Estopples are not favored by the
law. "

In our opinion, both on the facts and on the law, the judgment ap-

pealed from is correct, and accordingly it is   AFFIRMED.

Defendants to pay costs in both Courts.

*Judgment affirmed*